SO ORDERED.

SIGNED this 17th day of May, 2018.



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>SHELBY WAYNE MASKRID<br>STEPHANIE LINN MASKRID,<br>                Debtors. | Case No. 17-11419<br>Chapter 13 |
| IN RE:<br><br>STATE OF KANSAS, *ex rel.,*<br>Lana Gordon, Secretary of Labor<br><br>                Plaintiff,<br><br>vs.<br><br>SHELBY WAYNE MASKRID,<br><br>                Defendant. | Case No. 17-5144 |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

       This case highlights three principles. First, incomplete, improper, or

1

inadequate responses to statements of fact made in support of summary judgment lead to those facts being deemed admitted. Second, failing to schedule or notice a creditor results in that creditor's debt being saved from discharge. Finally, when an administrative agency has determined that the debtor was overpaid unemployment compensation because of the debtor's fraudulent conduct, even in a default setting, that is sufficient to except the agency's debt from the debtor's discharge.

As discussed below, Shelby Maskrid's response to the Kansas Department of Labor's (the "Department's" or "KDOL's") motion for summary judgment contains unsupported general denials of the Department's statements of fact that do not place those statements in issue. Further, Maskrid's failure to list or schedule a debt to the Department in a 2011 bankruptcy filing—he scheduled the Department of Revenue, not Labor—means that the Department never received notice or actual knowledge of the case before the deadline to file a complaint to except its debt from discharge. Even though the debtor completed the chapter 13 plan and was discharged, this debt was excepted from that discharge. Debtor's defense of discharge is therefore of no avail in this proceeding.

Though Maskrid did schedule the creditor in this 2017 case, the Department of Labor determined in 2010 that he knowingly made false representations to obtain unemployment benefits that he was not entitled to, findings that the debtor did not challenge. Even after receiving that determination, the debtor did not appeal or seek judicial review of the agency's findings. That determination preclusively establishes the debtor's intent to deceive and supports summary judgment. The Kansas

2

Department of Labor should be granted summary judgment on its § 523(a)(2)(A) complaint.[1]

   A. <u>Summary Judgment Standards</u>[2]

A movant's motion for summary judgment may be granted where the movant shows that no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law on those uncontroverted facts.[3] Facts are material if they are essential to the proper disposition of the claim under the applicable law and a fact is genuinely disputed if there is sufficient evidence from which the trier of fact could resolve the issue for the non-movant.[4] In reviewing the factual record, the Court must draw all reasonable inferences in favor of the non-movant.[5] The moving party has the initial burden to demonstrate the absence of genuine disputes of fact by reference to materials in the record -- pleadings, depositions, discovery responses, or affidavits.[6] The non-movant must specifically controvert each of the movant's statements of material fact with like reference or citation to the record or the fact may be deemed "undisputed," or "admitted."[7] Even if the movant's facts are deemed admitted, the movant must demonstrate, based upon

---

[1] The State of Kansas, Department of Labor appears by its attorney Andrew Jorgenson. The defendant/debtor Shelby Wayne Maskrid appears by his attorney David Lund.
[2] Fed. R. Bankr. P. 7056 makes the summary judgment rule Fed. R. Civ. P. 56 applicable to adversary proceedings. Summary judgment motions in this District are also subject to local rule D. Kan. L.B.R. 7056.1.
[3] Fed. R. Civ. P. 56(a).
[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[5] *Adler v. Wal-Mart Stores, Inc.,* 144 F. 3d 664, 670 (10th Cir. 1998).
[6] Fed. R. Civ. P. 56(c)(1) and (4); D. Kan. L.B.R. 7056.1(a) and (d).
[7] Fed. R. Civ. P. 56(c)(1) and (e)(2); D. Kan. L.B.R. 7056.1(a), (b) and (d).

those facts, that it is entitled to summary judgment as a matter of law.[8]

B. <u>Defendant's Failure to Controvert Summary Judgment Facts</u>

Maskrid's response to the KDOL's statements of uncontroverted fact do not comply with Fed. R. Civ. P. 56 or D. Kan. L.B.R. 7056.1. Maskrid states that he is "without sufficient knowledge" to admit or deny several facts asserted by the KDOL, much as one would in answering an adversary complaint, and therefore "denies the same."[9] Unsupported general denials that fail to "specifically explain in detail" why defendant can neither admit nor deny the assertion of fact run afoul of Rule 56(c)(1) and D. Kan. LBR 7056.1(b)(1). A "no knowledge" response does not "fairly meet the substance of the matter asserted" as required by D. Kan. LBR 7056.1(e) and does not place those facts in issue.[10] These facts are undisputed for purposes of this motion.[11]

Also insufficient is a denial of fact without *accurate* record support. Maskrid's response to Fact No. 13 suffers from that malady. Responding to the Department's contention that its debt was not listed in the prior case, Maskrid asserts that "KDOL was scheduled as a creditor" in the 2011 bankruptcy case without citing to any court record. Nor could he, because, as discussed below, he listed the Department of

---

[8] Fed. R. Civ. P. 56(e)(3); *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002).
[9] *See* Fact Nos. 8, 9, 10, and 14, in KDOL's motion for summary judgment, Doc. 16, and Defendant's response thereto, Doc. 17.
[10] *See Grynberg v. Total S.A.,* 538 F.3d 1336, 1345 (10th Cir. 2008), *cert. denied* 556 U.S. 1105 (2009) (factual assertion is uncontested where the summary judgment response states only that it is without knowledge to admit or deny (a response more appropriate in an answer to a complaint); "a simple denial, much less an assertion of ignorance, does not suffice."); *In re Fries,* 378 B.R. 304, 308 (Bankr. D. Kan. 2007) (non-movant "without knowledge" responses to statement of material facts are insufficient to defeat properly supported summary judgment motion).
[11] Fed. R. Civ. P. 56(e)(2).

4

*Revenue* as the holder of this debt in that case. Taking judicial notice of the pleadings in both cases, I see that neither "KDOL" nor the "Kansas Department of Labor" was mentioned anywhere in the 2011 case. Fact No. 13 is undisputed.

Maskrid's response to Fact No. 7 with its 31 separate subparts (a)-(ee) is also deficient. That contention describes the circumstances of defendant obtaining unemployment benefits, the alleged false representations, the agency's audit and investigation, and the examiner's determination. Those contentions are supported by citations to KDOL employee Teresa Morris's 9-page affidavit ("Morris Aff.") that refers to and authenticates 7 exhibits, copies of which are attached to the affidavit.[12] Instead of addressing each of the 31 subparts of the Department's contention, Maskrid states:

> Deny. You cannot determine the defendant's intent to commit fraud based on a review of 9 year old Kansas Department of Labor records. Additionally the dates listed in subsection f of this section are not related to the time frame in which Mr. Maskrid received benefits. See Shelby Maskrid Affidavit ….[13]

This general denial also fails to fairly address each of the separate subparts of Fact No. 7 other than the obvious incorrect dates mentioned in subpart (f), an error that the Department readily corrected in its reply.[14] The supporting exhibits to the KDOL's summary judgment motion correctly refer to the applicable time period

---

[12] Doc 16-1 and Exhibits A-H.
[13] Doc. 17, p. 3 and Doc. 17-1 (Maskrid Affidavit).
[14] Doc. 18, p. 1. *See* Fed. R. Civ. P. 56(e) and D. Kan. L.B.R. 7056.1(b)(1) and (e).

**5**

between May 16, 2009 and August 15, 2009.[15]

Mr. Maskrid's counter-affidavit consists of four-numbered paragraphs that fail to directly respond to any of the 31 contentions in the Department's Fact No. 7.[16] Maskrid denies that he acted with the intent to deceive in obtaining unemployment benefits, but he doesn't explain why what he reported to the KDOL differed from what his employer reported or why there was an overpayment. In the affidavit, he claims that he "called in" each week to report he was working part-time, arguing that he would not have seen the warnings about fraud that the Department's computer application contains.[17] But how he reported (or misreported) his part-time work is not material. Mr. Maskrid also claims that he doesn't recall being asked the number of part-time hours he worked, but does not dispute that he reported his weekly earnings to the Department KDOL while he was receiving benefits. While he professed to not understand how unemployment benefits are calculated, he does not dispute what the Department says he reported to it. None of this is sufficient to controvert the Department's contentions in the Morris affidavit. Therefore, I find the following material facts to be uncontroverted.

C. Uncontroverted Facts

For 14 weeks in 2009 from May to August, Shelby Maskrid applied for and

---

[15] The KDOL also corrects the date in its motion [Fact No. 7, subpart (aa)], that the Examiner's Determination was issued August 31, 2010, as evidenced by the attached and supporting Examiner's Determination. Doc. 18, p. 2; Morris Aff., Ex. A.
[16] Doc. 17-1.
[17] The KDOL regulations permit unemployment compensation claimants to apply for and report to the KDOL by telephone. *See* KAN. ADMIN. REG. §§ 50-3-2(a) and 50-3-3(b) and (c).

**6**

received weekly unemployment benefits in varying amounts that totaled $4,105. His weekly benefit amount of unemployment compensation was $317.[18] This weekly unemployment amount was adjusted downward in varying amounts based upon his earnings for each week.[19] For each of those weeks, Mr. Maskrid reported his earnings to the KDOL.[20] The KDOL paid a modified weekly unemployment benefit amount to Mr. Maskrid based on the earnings he reported because he was working as a maintenance employee for RHE Holdings #2 Inc./Super 8 Motel.[21]

Sometime after that, the KDOL initiated an Unemployment Insurance Benefit Audit by requesting Maskrid's employer to report his earnings during each benefit week.[22] The employer complied.[23] A KDOL examiner then compared the wages reported by Maskrid with the wages reported by his employer and prepared an "Overpayment Worksheet" dated July 20, 2010.[24] For each of the 14 weeks, Maskrid

---

[18] *See* Morris Aff., Ex. B., p. 2. *See also* KAN. STAT. ANN. § 44-704(b) (an individual's determined "weekly benefit amount") and KAN. ADMIN. REG. § 50-1-4(e)(1) (determining the worker's benefit year and the weekly benefit amount for which the worker is qualified based on his base period wage credits) and § 50-1-4(k)(2) (defining a partially unemployed worker as one who works less than fulltime and earns less than the individual's "weekly benefit amount.").

[19] *See* Morris Aff., ¶s 20-24.

[20] Morris Aff. ¶ 11.d., Ex. D is a printed report of Maskrid's weekly report of earnings as recorded and stored on KDOL's computer information system. Maskrid does not dispute these weekly reports or that the earnings shown thereon differ from what he reported to the KDOL. *See also,* Morris Aff., Ex. B, p. 2.

[21] In general, the greater his weekly earnings, the less unemployment compensation he received. *See* Morris Aff., Ex. B, p. 2. *See also State of Kansas ex rel. Gordon v. Oliver (In re Oliver),* 554 B.R. 493, 495 (Bankr. D. Kan. 2016) for a succinct summary of the process for requests for unemployment benefits. That summary is based on an Affidavit from Teresa Morris and is consistent with Ms. Morris' Affidavit submitted in this case.

[22] Morris Aff., ¶ 26-27, 31-32 noting that a claimant's reported earnings are verified at a later date.

[23] Morris Aff., Ex. C

[24] Morris Aff., Ex. B, p. 2.

7

underreported his earnings, resulting in the overpayment of weekly benefits. For eight of the fourteen weeks, Maskrid was entitled to no unemployment benefits at all because his actual weekly earnings (as reported by the employer) were too high. The examiner recalculated the amount of weekly unemployment benefits that Maskrid was entitled to receive based upon his earnings as reported by his employer. The examiner concluded that Maskrid was overpaid benefits over the 14 weeks of $2,954.[25] On July 20, 2010, the KDOL sent the results of the audit to Maskrid notifying him of the overpayment and giving him ten days to dispute the audit report, failing which the results would be considered "correct" and an overpayment established.[26] Quoting the Kansas statute, the KDOL noted that the overpayment would accrue interest at the rate of 1.5% per month and if the overpayment was received as a result of fraud, misrepresentation or willful nondisclosure, interest would accrue from the date of the final determination of overpayment until repayment with interest was received.[27] The KDOL also advised that under the Kansas unemployment compensation law, an individual is disqualified for benefits for a period of one year if the individual knowingly made a false statement or representation to obtain or increase benefits unlawfully.[28] Maskrid did not respond to the KDOL's July 20 audit letter or report.

On August 31, 2010, the KDOL issued and mailed to Maskrid the Examiner's

---

[25] *Id.*
[26] Morris Aff., Ex. B, p. 1.
[27] *See* KAN. STAT. ANN. § 44-719(d)(2) (2017 Supp.).
[28] *See* KAN. STAT. ANN. § 44-706(g) (2017 Supp.) (Subsequent to 2010, the disqualification period was enlarged to 5 years).

8

Determination of an unemployment compensation overpayment in the amount of $2,954.[29] It provided in relevant part:

> FINDINGS: AN INVESTIGATION HAS FOUND THAT YOU FAILED TO REPORT . . . CORRECT EARNINGS WHILE RECEIVING UNEMPLOYMENT BENEFITS.
>
> APPLICABLE LAW: K.S.A. 44-706 PROVIDES FOR ONE (1) YEAR DISQUALIFICATION FROM RECEIPT OF BENEFITS IF THE INDIVIDUAL . . . KNOWINGLY MAKES A FALSE STATEMENT TO OBTAIN BENEFITS UNLAWFULLY.
>
> DETERMINATION: IT IS DETERMINED THAT YOU WILLFULLY AND KNOWINGLY MADE FALSE REPRESENTATIONS TO RECEIVE BENEFITS NOT DUE, THEREFORE, YOU ARE DISQUALIFIED BEGINNING 08-16-2009 AND ENDING 08-21-2010.[30]

The Examiner's Determination clearly determined that Maskrid made willful and knowingly false representations "to receive benefits not due." It advised Maskrid of his right to appeal the determination within sixteen (16) days. When Maskrid did not appeal the Examiner's Determination, it became final on September 16, 2010. The only recovery of the overpayment obtained by KDOL was a $43.67 credit on April 7, 2011 resulting from a setoff of Maskrid's state income tax refund and applied to the unpaid principal amount of the overpayment. The total unemployment overpayment debt as of July 24, 2017, the date of Maskrid's chapter 13 petition, is $6,248.25 and consists of principal in the amount of $2,710.33, federal additional compensation in the amount of $200, and accrued interest from the date of the final Examiner's Determination in 2010 to July 24, 2017 in the amount of $3,337.92.[31] Maskrid does

---

[29] Morris Aff., Ex. A.
[30] *Id.*
[31] Morris Aff., Ex. H.

not dispute the amount of the overpayment debt, or any of its components.

On February 15, 2011, Mr. Maskrid and his wife filed a chapter 13 petition (the "2011 Case").[32] They scheduled an unsecured claim of the Kansas Department of Revenue (KDOR) for "overpaid unemployment" in an unknown amount and listed the KDOR's address as 915 SW Harrison St., Topeka, Kansas. They did not list the Department of Labor as a creditor, so the Department did not receive notice of the 2011 Case until December 7, 2012 when Mr. Maskrid called, long after the deadline to object to discharge of a debt had expired. Maskrid requested that the KDOL not intercept any tax refunds. The Maskrids' chapter 13 plan was confirmed. They completed their plan payments in 2016 and received a chapter 13 discharge on May 18, 2016.

The Maskrids were represented by the same attorney when they filed this case in July of 2017, scheduling the Department's claim as unsecured in the amount of $5,353. The Department filed this adversary proceeding in October and sought to except Maskrid's debt for the overpayment from his discharge under §523(a)(2)(A) because he made false statements to obtain the benefits.[33]

KDOL now moves for summary judgment.[34] Maskrid's objection boils down to two arguments: (1) he asserts that the unemployment overpayment debt was

---

[32] Case No. 11-10290 (Bankr. D. Kan.). Maskrid and his wife also filed a chapter 13 case in 2009, prior to incurring the debt for overpayment of unemployment benefits, which was dismissed February 22, 2010 for failure to make plan payments. *See* Case No. 09-11487 (Bankr. D. Kan.)
[33] *See* Fed. R. Bankr. P. 4007(c). *See also* §1328(a)(2) (the chapter 13 discharge excepts debts that are nondischargeable under § 523(a)(2)). Section 727, cited by the KDOL, applies in a chapter 7 case and is inapplicable here.
[34] Doc. 16.

**10**

discharged by the 2011 Case; and (2) that his fraudulent intent, necessary to establish a § 523(a)(2)(A) exception, cannot be determined on summary judgment by relying on the preclusive effect of the Examiner's Determination that was entered by default. Both issues are ripe for decision. The first is a question of law and the second is a mixed question of fact and law that requires the Court to read Maskrid's affidavit and response in the most favorable light. Maskrid focuses only on the intent element of a § 523(a)(2)(A) claim – whether he acted with fraudulent intent in obtaining more unemployment compensation than he was entitled to. The Court must determine whether the Examiner's Determination that Maskrid acted with fraudulent intent can be given preclusive effect or whether an intent to deceive can be inferred from the uncontroverted facts.[35]

D. <u>Analysis</u>

    *I.    Maskrid's Overpayment Debt was Not Discharged in the 2011 Case.*

Maskrid pleads his discharge in the 2011 Case as a defense. In that case, he scheduled the "overpaid unemployment" claim as an unsecured claim that was owed to the Kansas Department of Revenue, not Labor, and listed the Revenue Department's address instead of Labor's on both the schedules and the creditors

---

[35] Due to the age of Maskrid's debt, he also suggests that the KDOL's claim is time-barred by the statute of limitations. That argument can be summarily rejected. In *In re Oliver,* Judge Karlin decided this exact issue and in a well-reasoned opinion concluded that there is no applicable statute of limitations under Kansas law governing the examiner's determination of liability for unemployment benefit overpayments obtained through fraud or the KDOL's recovery or collection of such a debt. *See State of Kansas ex rel. Gordon v. Oliver (In re Oliver),* 547 B.R. 423 (Bankr. D. Kan. 2016).

**11**

matrix.

Section 1328 provides that upon completion of all payments under the debtors' chapter 13 plan, a discharge is granted that covers all debts provided for by the plan except any debt of the kind enumerated in § 1328(a)(2), including those described by § 523(a)(3)(B). That section excepts debts that are not listed or scheduled with the name of the creditor, if known, in time to permit the filing of a proof of claim and request for nondischargeability of a debt under § 523(a)(2), unless the creditor had notice or actual knowledge of the case in time to file a timely proof of claim and a timely nondischargeability complaint.

The two Departments are different agencies with different addresses. The Department of Labor was never listed or scheduled as a creditor in the 2011 Case and did not receive notice of the 2011 Case in time to participate in it. The Department was not aware of the 2011 Case until Maskrid phoned in December of 2012, long after the Fed. R. Bankr. P. 4007(a) deadline for filing a nondischargeability complaint had expired.[36] The KDOL was an unscheduled creditor without actual knowledge of the 2011 Case in time to file a timely nondischargeability complaint and § 523(a)(3)(B) excepted Maskrid's debt for the "overpaid unemployment" from his § 1328(a) discharge in the 2011 Case.[37] The KDOL is entitled to summary judgment on Maskrid's discharge defense to its § 523(a)(2)(A) complaint.

---

[36] Fed. R. Bankr. P. 4007(c).
[37] *See Kansas Dept. of Labor v. Boyd (In re Boyd),* 563 B.R. 62, 64-65 (Bankr. D. Kan. 2016) (prepetition debt for overpayment of unemployment benefits was not subject to chapter 13 discharge where KDOL was not scheduled as a creditor, had no notice and opportunity to file a claim or participate in the confirmation process, and debtors' plan was confirmed before KDOL received notice of the bankruptcy case).

**12**

## II. Maskrid's Overpayment Debt was Incurred by Making Knowingly False Statements with Intent to Deceive.

Section 523(a)(2)(A) excepts debts from discharge that were incurred by "false pretenses, a false representation, or actual fraud." The creditor must prove that: "(1) the debtor made a false representation; (2) the debtor intended to deceive the creditor; (3) the creditor relied on the debtor's conduct; (4) the creditor's reliance was justifiable; and (5) the creditor was damaged as a proximate result."[38] The Examiner's Determination was entered without Maskrid's responding to it and Maskrid challenges its preclusive effect in this proceeding.

He contends that the Examiner's Determination is like a "default judgment" that is not entitled to preclusive effect. There are two problems with this contention. One, the Examiner's Determination was only a determination by "default" because Maskrid chose not to dispute the audit or appeal the final determination and never sought judicial review after exhaustion of his administrative remedies. He was given notice of his rights to dispute the audit report and to appeal the Examiner's Determination. When he did neither, it became a final determination. Maskrid chose not to exercise his appeal rights and that choice cannot provide him with relief now.

---

[38] *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996). The Court acknowledges that the KDOL has the burden of proof to establish each element of its § 523(a)(2)(A) claim. Because Maskrid disputes only the intent element, the Court devotes its analysis to this element, but finds that all other elements of its claim are established by the uncontroverted facts: Maskrid falsely represented his weekly earnings to the KDOL, the KDOL justifiably relied on those representations to promptly pay Maskrid weekly unemployment benefits, and Maskrid's false representations caused the KDOL to overpay benefits.

**13**

Two, the Examiner's Determination can be afforded preclusive effect because the agency determined that he had the intent to deceive and Maskrid had a full and fair opportunity to "litigate" the issue of his intent.[39] He simply didn't take that opportunity. The doctrine of collateral estoppel prevents parties from relitigating previously determined issues and applies in discharge litigation under § 523.[40]

Under Kansas law, collateral estoppel may be invoked where there has been a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, the parties are the same or in privity, and the issue litigated was determined and necessary to support the judgment.[41] The Examiner's Determination concluded:

> DETERMINATION: *IT IS DETERMINED THAT YOU WILLFULLY AND KNOWINGLY MADE FALSE REPRESENTATIONS TO RECEIVE BENEFITS NOT DUE*, THEREFORE, YOU ARE DISQUALIFIED BEGINNING 08-16-2009 AND ENDING 08-21-2010.[42]

Maskrid made knowingly false representations of his weekly earnings with the intent

---

[39] *See University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1986) (federal courts must give preclusive effect to fact findings of state administrative agency acting in a judicial capacity if parties had an adequate opportunity to litigate the issue), citing *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422 (1966); *Umholtz v. Kansas, Dept. of Social and Rehabilitation Services,* 926 F. Supp. 2d 1222, 1232 (D. Kan. 2013) (Kansas applies the doctrine of collateral estoppel to unreviewed decisions of administrative agencies acting in a judicial or quasi-judicial capacity.); *Zimmerman v. Sloss Equip., Inc.,* 72 F.3d 822, 826 (10th Cir. 1995) (whether an administrative agency's determination is judicial in nature turns on whether there were due process protections).

[40] *Hill v. Putvin (In re Putvin),* 332 B.R. 619, 625 (10th Cir. BAP 2005). *See In re Foster,* 280 B.R. 193 (Bankr. S.D. Ohio 2002) (State agency administrative determination that debtor fraudulently obtained workers compensation benefits was entitled to issue preclusive effect (collateral estoppel) under state law in subsequent § 523(a)(2) proceeding).

[41] *Umholtz,* 926 F. Supp. 2d 1222, 1232 (D. Kan. 2013), citing *Jackson Trak Group Inc. Mid States Port Authority,* 242 Kan. 683, 751 P.2d 122 (1988).

[42] Morris Aff., Ex. A [Emphasis added.].

**14**

to deceive to obtain unemployment benefits to which he was not entitled. Maskrid complains that "9 year[-]old Kansas Department of Labor records" are insufficient to establish his fraudulent intent. But the Examiner could easily have inferred the intent to deceive from a contemporaneous review of the Department's records which reflected then (as now) that he applied for and received unemployment benefits by understating his earnings from his employer and from his conduct subsequent to the alleged misrepresentation.[43] The intent to deceive can also be inferred from a knowingly made false statement made when the speaker knows it will induce another to act.[44] Here, Maskrid knew or should have known that Department would rely on his weekly reports of earnings to pay his weekly claim for unemployment benefits.[45]

This case shares many similarities with *In re Oliver* in which Judge Karlin concluded that an examiner's determination and the supporting summary judgment record demonstrated the debtor's intent to deceive:[46]

> KDoL's June 30, 2009 determination explicitly states: "It is determined that you (Debtor) willfully and knowingly made false representations to receive benefits not due." Additionally, the uncontroverted facts show that Debtor received . . . benefits based on representations he knew were false and yet failed to remedy the error, further persuading the Court that Debtor's deception was intentional. Though these facts are

---

[43] *In re Jacobson,* 485 B.R. 255, 261 (Bankr. D. Kan. 2013); *In re Nealon,* 532 B.R. 412, 421 (Bankr. D. Mass. 2015) (debtor's conduct after the debt was incurred may be relevant circumstances if the conduct provides an indication of debtor's state of mind at the time of the misrepresentation); *In re Sneed,* 543 B.R. 848, 863 (Bankr. N.D. Ill. 2015) (Intent may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part.).
[44] *Jacobson,* 485 B.R. at 261, citing *In re Young, supra* at 1375; *Sneed, supra.*
[45] *See* Morris Aff., ¶s 20-22, 25-27 (KDOL relies on the claimant's representations of the amount of weekly earnings in order to timely process and pay unemployment claims and may later verify the claimant's representations.).
[46] 554 B.R. 493 (Bankr. D. Kan. 2016).

**15**

circumstantial, Debtor fails to refer to a single portion of the record—whether by affidavit, deposition transcript, or interrogatory answer—specifically controverting KDoL's assertions and showing that a genuine issue exists as required by the local rules. Without an iota of contradictory evidence, the Court finds that Debtor intended to deceive KDoL through his misrepresentations.[47]

We may say the same here. Even if I declined to give the Examiner's Determination preclusive effect as to intent, the rest of the summary judgment record would support a finding of the intent to deceive. Despite being presented with the evidence that his employer had paid him more than he reported to the Department, Maskrid did not attempt to explain the discrepancy. He failed to respond, even after being advised of the potential negative ramifications of the audit findings. For example, if he made an innocent mistake, he could have easily explained it by furnishing his pay stub or other evidence of his gross earnings. But he did nothing then, and presents nothing now, that explains what happened in 2009. The record shows that Maskrid misrepresented his earnings for 14 weeks in a row, substantially underreporting earnings in eight of them. This repetition suggests that Maskrid's conduct was more than merely negligent or inadvertent as does the fact that he would not have been entitled to *any* unemployment compensation in eight of the fourteen weeks had he truthfully reported his weekly earnings. Maskrid had every reason to know that he was required to report his weekly earnings each week and that the Department was providing him unemployment benefits based upon his reports. As Judge Karlin pointed out in *Oliver*, the Department acts fast to provide prompt relief

---

[47] *Id.* at 500-01.

to families who have lost employment and income.[48] That requires it to rely on a claimant's truthfulness now and verify it later, after the benefits have been disbursed. It's clear in this case that Mr. Maskrid's statements were knowingly untruthful and that he made them to draw unemployment compensation to which he was not otherwise entitled. That entitles the Department to summary judgment on its § 523(a)(2)(A) complaint.

The Kansas Department of Labor's motion is therefore GRANTED, excepting debtor Shelby Maskrid's debt for overpaid unemployment benefits obtained by fraud in the amount of $6,248.25 from his chapter 13 discharge under § 523(a)(2)(A) and § 1328(a)(2) should he receive one. A judgment on decision will be issued this same date.

# # #

---

[48] 554 B.R. at 501-02.